| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC-SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#:<br>DATE FILED: 6/26/2020 |

UNITED STATES OF AMERICA,

v.

ESTEBAN AYALA,

                Defendant.

No. 17-cr-618 (RA)

ORDER

RONNIE ABRAMS, United States District Judge:

      The Court is in receipt of the attached letter from Defendant Esteban Ayala, which it construes as a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), seeking compassionate release in light of COVID-19. No later than 5:00 p.m. on Wednesday, July 1, 2020, the Government shall advise the Court of its position as to Mr. Ayala's request. If the Government opposes the request, it shall provide its reasoning. The Government shall provide a copy of this Order to Mr. Ayala.

SO ORDERED.

Dated:    June 26, 2020
              New York, New York

                                              Ronnie Abrams
                                              United States District Judge

Mr. Esteban Ayala
Reg. No. 66299-298
FCI-Fort Dix
P.O. Box # 2000
Joint Base MDL, New Jersey 08640

Date: June 11, 2020:

Ms. Ronnie Abams
United States District Judge
40 Foley Square
New York, NY 10007

In re: <u>United States of America v. Esteban Ayala</u>:
Crim. No. <u>17-cr-00618-(RA)</u>         :

Dear Judge Abrams,
    I'm writing you seeking assistance at this present time in pursuant to section (B)(2) of the CARES Act. In light of COVID-19 pandemic that have been determined to be at this FCI-Fort Dix facility whereas, 58 inmates have contracted the COVID-19 virus recently and are presently being housed at a building thats less then 30 or 40 yards from the building I am being housed inside of my becoming infected is one of my greatest fear.
    I'm respectfully asking of this Court to "Modify" my sentencing in such a manner, that would allow me to serve the remainder of my sentence on home confinement, I have indeed filed with the Warden David E. Ortiz, concerning placement on home confinement. But there has been a disruption in the normalcy of BOP functioning. We have had no visiting privileges since March 2020, and there is no set time frame visitation privileges when they would return. Although the BOP are to provide video visitation for us, here at the FCI-Fort Dix, nothing of such has occur.
    The new normal consist of being locked in the unit all day with there being roughly about 200 inmates in the RDAP unit where I'm in. The warden has stated on numerous occasions it is impossible to facilitate social distancing at FCI-Fort Dix in response to Attorney General William Barr's stating social distancing is highly recommended to prevent the spreading of the COVID-19 virus. There has been almost no outdoor recreation for weeks, and when there is it for one hour 2-3 days out the week.
    There has been confirmed cases of COVID-19 at SPC-Fort Dix and the building being used to quarantine inmates from the camp("SPC-Fort Dix") is close as I has mentioned above.
    It has been 1 hot meal a day with a sandwich bag for dinner since March 2020. I understand these are unforeseen circumstances that none of us could have predicted; at the same time these are not normal conditions for inmates that have followed rules and are usually conditions when you are sanctioned and up in the prison (special housing unit for disciplinary reasons).
    I was sentenced to 60 months October 16,2018. Since being incarcerated, I've been able to work on myself both mentally and physically. I've completed numerous self-help classes and ACE classes. I've completed the DRAP program 500 hours " Recidivism Program "and FCI-Fort Dix April 17,2020. All DRAP participants at FCI-Fort Dix are put in for a RRC referral of 12 months halfway house(Re-entering Release Centers). I do also qualify for early release one

house(Re-entering Release Centers). I do also qualify for early release one year under the Violent Crime Control & Law Enforcement Act. 18 U.S.C. 3621(e)(2) early release. I understand halfway house dates are contingent on the bed space availability at the specific halfway house you are going to and vary case by case with each inmate. I got put in for a June 16, 2020, referral date (12 months) by my unit team case manager on February 6, 2020. I just now received a date from the Bronx halfway house of September 2, 2020. I received 9 months and 2 weeks of halfway house that I am very grateful for. I do believe if the Bronx halfway house had not closed in December before COVID-19 and just now being in the process of re-opening during these extreme times of COVID-19 pandemic and Riots that have cause a Nationwide lockdown in the FBOP, I would have got approved for almost the whole 12 months halfway house like they were approving during normal circumstances.

I believe I'm ready to be home on "Home Confinement," with my family and loved ones. On January 19, 2018 you released me on a bond and I spent 3 months in an ankle monitor on home confinement. During this pre-trial frame I did not violate any terms of release. I have shown I am capable of complying with rules and conditions of Home Confinement. My criminal history and confinviction involved no violence. This is my first criminal conviction. I Have had no disciplinary infractions while serving my sentence. I have a release plan in place for when I get out of prison. I understand I am still responsible for the time remaining on my sentence due to my past decisions; I choose to not let my past decisions define me for the rest of my life. I have the tools to make better decisions and prevent me from my mistakes, and be around my family and friends during the rough times.

If granted Home Confinement, my father Jorge Ayala would come pick me up at FCI-Fort Dix regardless of Date/Time and transport me to my grandparents house in the Bronx. This is the same house I spend the 3 months on home confinement and same house approved by probation in March after I got put in for halfway house in February. Immediately upon release, I will contact my probation office by phone or in person. If required or necessary, I will self quarantine for 14 days. Next, I will schedule plans to report to TRAP. TRAP, is follow up treatment for inmates that completed RDAP is functioning through video confrence during this time. I have my birth certificate, Social security card and NY ID secured away at my grand parents house. I have a job waiting for me at the family business " Mala's cafe." The cafe is across the street from the house I will be staying at and is still open during this time doing take out and catering. Due to COVID-19, I'm not sure how many hours I will be working. I anticipate being able to move forward from this experience and show.

Dated: June 11, 2020:

Respectfully Submitted.

*Esteban Ayala* (signature)
Esteban Ayala
Reg. No. 66299-298

cc:file



```
                              U.S. Department of Justice
                              Federal Bureau of Prisons
                              Federal Correctional Institution
                              P.O. Box 38
                              Fort Dix, New Jersey 08640
```

May 18, 2020

From:    J. Rodriguez, Psy.D., DAP Coordinator

Re:      Esteban Ayala's participation in RDAP

The Residential Drug Abuse Program (RDAP) is the Bureau of Prisons' most intensive substance abuse treatment program. It follows the CBT model of treatment wrapped into a modified therapeutic community model in which inmates learn what it is like living in a pro-social community. Inmates live in a unit separate from general population; participate in half-day programming and half-day work, school, or vocational activities. The Bureau and National Institute on Drug Abuse combined funding and expertise to conduct a rigorous analysis of the Bureau's RDAP. Research findings demonstrated that RDAP participants are significantly less likely to recidivate and less likely to relapse to drug use than non-participants. The studies also suggest that the Bureau's RDAPs make a significant difference in the lives of inmates following their release from custody and reintegration into the community.

The RDAP consists of at least nine months of residential therapeutic programming, plus six months of additional services through Community Treatment Services (CTS) while the inmate is located at the halfway house or home confinement. This portion of treatment is crucial for transition and reintegration into society. It allows inmates to continue to refine their skills in the real world while getting back to work and becoming a productive member of society.

Mr. Ayala began RDAP at FCI Fort Dix on July 15, 2019. During the course of treatment, he successfully completed the required nine treatment modules: Community, Opportunity to Change, The ABC's of Thinking, Rational Self-Counseling, Challenge Thinking, Prosocial Lifestyle, Connecting with Others, Strategies for Success, and Moving Forward. He completed the 500-hour residential portion on April 17, 2020. Throughout that time, he demonstrated motivation toward growth and sobriety, as well as a desire to help other participants in the program. Although he struggled at times, he showed a consistent interest in challenging himself to improve his criminal tendencies,

unhealthy relationships, and errant thinking. I would refer the reader to a copy of his Treatment Summary for further details regarding the specifics of his course of treatment.

Within the time in the program, Mr. Ayala showed willingness to hear feedback and to hold his peers accountable. Additionally, he was responsible and took accountability for his own actions. He continued to show these traits as a mentor in the program. Mr. Ayala faced a difficult situation with honesty which cost him his mentor position in the program and he received additional treatment interventions. It is important to note that Mr. Ayala used this situation as a learning experience and to encourage others to practice honesty and accountability. Despite this setback, he never lost momentum. Mr. Ayala has not only involved himself in his own treatment, but has been able to help other progress through treatment as well. He has shown the ability to think rationally, even when the outcome is not the one he really wants. Mr. Ayala maintained his mentorship role in the therapeutic community even after he graduated the 500-hour portion of the program.

Please do not hesitate to contact me if you require further information regarding the RDAP, or Mr. Ayala's participation in the program. I may be reached at 609-723-1100, ext. 6235.

Sincerely,

J. Rodriguez, Psy.D.

Drug Abuse Program Coordinator

Warden
DAVID E. ORTIZ
_____
_____

Date: 4-7-2020

Re:  Request for Release to Home Confinement pursuant to 18 U.S.C. § 3624(c)(2) for inmate ESTEBAN AYALA, Reg. No. 66299-298

Dear Warden,

I hereby request that you that you transfer me to home confinement for the rest of my sentence pursuant to 18 U.S.C. § 3624(c)(2), section 12003(b)(2) of the CARES Act, and Attorney General Barr's April 3, 2020 Memorandum for the Director of the Bureau of Prisons, "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19."[1]

Generally applicable support for my request is outlined below. In addition, the following factors specific to me (indicated by a check mark below) demonstrate that I should be transferred to home confinement:

☑ I am due to be released relatively soon, on _waiting on halfway house date for rehab_;

☐ The virus has already been detected in my facility;

☐ I am over the age of 65;[2]

☐ I am over the age of 50;[3]

---

[1]  Attorney General Memorandum for the Director of Bureau of Prisons, "Increasing Use of Home Confinement at Institutions Most Affected by COVID-10" (April 3, 2020), available at https://www.justice.gov/file/1266661/download (last visited April 6, 2020).

[2]  According to the Centers for Disease Control and Prevention (CDC), "[b]ased on currently available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions might be at higher risk for severe illness from COVID-19. Based upon available information to date, those at high-risk for severe illness from COVID-19 include" people aged 65 years and older, people who live in a nursing home or long-term facility, and people with the conditions listed above." https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html (last visited April 2, 2020). "Many conditions can cause a person to be immunocompromised, including cancer treatment, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications." Id.

[3]  See notes 6-10 and accompanying text, infra.

Request re COVID-19: Inmate __C. AYALA__, Reg. No. __66259298__
Page 2

- ☐ I have the following medical condition(s), which place me at heightened risk for infection or severe illness, according to the CDC:

    - ☐ chronic lung disease, specifically
    _____

    - ☐ moderate to severe asthma;

    - ☐ heart disease with complications, specifically
    _____

    - ☐ immunocompromised because of:
    _____

    - ☐ severe obesity (body mass index [(BM]I)≥40);
    - ☐ diabetes;
    - ☐ renal failure;
    - ☐ liver disease;

- ☐ I am pregnant;[4]

- ☐ I have another health condition that I believe could put me at higher risk of infection or make severe illness more likely, or recovery more difficult.
_____
_____

I take the following medications because of the condition(s) I noted above:
_____
_____

- ☑ I was released on bond before my conviction, and I did not violate any terms of release.

---

[4] According to the CDC, although "data on COVID-19 has not shown increased risk to people who are pregnant, they "should be monitored since they are known to be at risk with severe viral illness[.]" *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html (last visited Apr. 3, 2020).

Request re COVID-19: Inmate _____, Reg. No. _____
Page 3

- ☑ My criminal history includes no convictions involving violence.
- ☑ I am serving time for my first conviction.
- ☑ I have had no disciplinary infractions while serving time.
- ☑ I have participated in the following BOP programing:
  RDAP, ACE Classes, Self help classes
- ☐ Other _____

I have a release plan. If I am released, I will:
Be working at Mela's CAFE where I worked during my 3 month Home Confinement time during pre-trial

    In the April 3 Memorandum noted above, the Attorney General formally directed that BOP "immediately review all inmates who have COVID-19 risk factors, as established by the [Centers for Disease Control and Prevention] CDC. . ." because he has found that COVID-19 has created emergency conditions that are "materially affecting" the functioning of the BOP. To be clear, the Attorney General thus directed the BOP to review "all at-risk inmates – not only those who were previously eligible for transfer" pursuant to § 3624(c)(2).

    But conditions merit transfer to home confinement or release to even more inmates. Even those younger than 65 and/or otherwise healthy patients are not immune from infection or serious complications. According to the CDC, nearly 40% of patients hospitalized from coronavirus were 20 to 54 years old.[5] As of March 16, 2020, more than half of those hospitalized and nearly half of those admitted to an Intensive Care Unit were under the age of 65.[6] The Intensive Care National Audit

---

[5] *Younger Adults Make Up Big Portion of Coronavirus Hospitalizations in U.S.*, The New York Times (Mar. 20, 2020), at https://www.nytimes.com/2020/03/18/health/coronavirus-young-people.html (last visited March 31, 2020).

[6] Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) — United States, February 12–March 16, 2020, *available at* https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm (last visited Apr. 9, 2020).

Request re COVID-19: Inmate _____, Reg. No. _____
Page 4

and Research Centre in London reports that 45.8% of those between the ages of 50-69 admitted to critical care died in critical care.[7] Data from China reflects that people over the age of fifty face a greater risk of serious illness or death from COVID-19.[8] Moreover, public health experts agree that all incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[9]

In short, the virus puts every incarcerated individual or BOP staff-member at significant risk of infection. This also places the general community at risk because every infection can lead to several more, including those in the community who come into contact with BOP staff who may not show any sign of their infection yet still be contagious.[10] Each additional infection puts a further strain on medical personnel and supplies, which are already overburdened. Transferring me to home confinement will decrease the population and risk at this BOP facility, and will reduce risk of infection and strain on the surrounding community, without endangering the greater community.

I ask that you immediately consider my case for transfer to home confinement. Thank you for your consideration.

Respectfully submitted by: _[signature]_        Date: 4-7-2020

---

[7] ICNARC report on COVID-19 in critical care, ICNARC (Apr. 4, 2020), available at file:///C:/Users/rigby/Downloads/ICNARC%20COVID-19%20report%202020-04-04.pdf%20(2).pdf (last visited Apr. 9, 2020).

[8] Xianxian Zhao, et al., Incidence, clinical characteristics and prognostic factor of patients with COVID-19: a systematic review and meta-analysis (March 20, 2020), available at https://www.medrxiv.org/content/10.1101/2020.03.17.20037572v1 (last visited Apr. 9, 2020).

[9] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), at https://bit.ly/2W9V6oS (last visited March 31, 2020).

[10] "Infected but Feeling Fine: The Unwitting Coronavirus Spreaders," New York Times (March 31, 2020), available at https://www.nytimes.com/2020/03/31/health/coronavirus-asymptomatic-transmission.html (last visited Apr. 1, 2020); CDC, "How Coronavirus Spreads" webpage ("Some spread might be possible before people show symptoms; there have been reports of this occurring with this new coronavirus . . .").

Request re COVID-19: Inmate __AYALA__, Reg. No. __66299298__
Page 5

Reg. No. __66299298__

☑ Additional arguments for my request are in pages that follow.

I got put in for 12 months halfway house because I'm in RDAP. June 16, 2020 would be my date to get out of Fort Dix if I get the whole 12 months halfway house.

Inmate Request to Staff Member Response;

Inmate- Ayala, Esteban

This is regarding your request received in my office for Home Confinement. An RRC referral was completed on 2-6-20 and you are either awaiting RRC approval by the RRM office, or you have already received an approved RRC date of ___TBD___ to ___TBD___. Every referral that is received in the RRM office is reviewed for Home Confinement. If you are approved for Home Confinement I will advise you. As of this moment, you have not been found eligible. However, you have been approved for RRC with the details noted above.

CSW L. Alexander, DAP2 A-Z

Recieved 4/dd

petition resubmitted in June to warden and unit team